

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 11, 1960

Hon. Zollie Steakley
Secretary of State
Austin, Texas

Opinion No. WW-880

Re: Authority of the Secretary of State
to accept and file an application
for the adoption of the provisions
of the Texas Non-Profit Corporation
Act by a corporation which is incor-
porated for the purpose of maintain-
ing fishing and hunting clubs and
protecting and preserving fish and
game and raising livestock for pro-
fit on the preserves of the club.

Dear Mr. Steakley:

You have requested an opinion of this office concerning a corporation
which has applied to adopt the provisions of the Texas Non-Profit Corporation
Act and which has authority in its charter to issue stock and has for its cor-
porate purpose the purpose expressed in Subdivision 10 of Article 1302 of
Texas Revised Civil Statutes of 1925. Your questions are:

1. Should the Secretary of State accept and file the application
when the applicant was organized for the purpose expressed in
Subdivision 10 of Article 1302?

2. Should the Secretary of State accept and file an application
made by a corporation authorized to issue capital stock under
its existing charter?

3. What procedure should be followed by the Secretary of State
in determining the non-profit status of those corporations which
were organized under the provisions of Title 32 of the Revised
Civil Statutes of 1925 and whose charters do not contain any ex-
press statement to the effect that they were organized for non-
profit purposes?

Your questions will be dealt with in reverse order.

We assume the third question is asked with reference to such a deter-
mination being made in connection with an application for the adoption of the
Texas Non-Profit Corporation Act. This opinion is accordingly so limited.
It is, of course, fundamental that no corporation except a non-profit corpora-
tion may adopt the provisions of the Non-Profit Corporation Act. Article 10.04

and Article 1.02A (1), (2), and (3), Texas Non-Profit Corporation Act.[1] When a corporation proposes to adopt the provisions of the Act, and makes application to that effect to the Secretary of State, he, the Secretary of State, must find that the application "conforms to the law." Article 10.04B (3), Non-Profit Corporation Act. In so doing, the Secretary of State must necessarily determine whether the applicant corporation is, in fact, a non-profit corporation. As enunciated in Attorney General's Opinion WW-849, the mere fact that the purpose clause in the charter of the applicant corporation recites that it is non-profit is not conclusive or definitive of the corporation's non-profit status. See Celina & Mercer County Telephone Co. v. Union Center Mutual Telephone Association, 102 Ohio St. 487, 133 N.E. 540 (1921) and Read v. Tidewater Coal Exchange Inc., 116 Atl. 898 (Del.Chan. 1922). The criteria by which the Secretary of State should determine whether a corporation is in fact a non-profit corporation are set out in Article 1.02A (3) and 2.24 of the Act and were discussed at greater lengths in Opinion WW-849 to which you are referred.

Your further attention is called to the provisions of Article 9.04 relating to the powers of the Secretary of State, which reads as follows:

"The Secretary of State shall have the power and authority reasonably necessary to enable him to administer this Act efficiently and to perform the duties therein imposed upon him."

Since the Secretary of State must decide whether a corporation is, in fact, a non-profit corporation and since such a decision is necessarily factual in nature, the provisions of Article 9.04 authorize the Secretary of State as a condition precedent to the accepting and filing of any application for adoption of the provisions of the Non-Profit Corporation Act to require the applicant corporation to furnish such germane and material information as is reasonably necessary to enable the Secretary of State to determine the non-profit status of the corporation.

In response to your second question, you are advised that the provision of the applicant corporation's charter authorizing the issuance of capital stock is not in and of itself a bar to the applicant corporation's adoption of the Non-Profit Corporation Act. Snyder v. Findlay Chamber of Commerce, 53 Ohio St. 1, 41 N.E. 33 (1895); Celina & Mercer County Telephone Co. v. Union Center Mutual Telephone Association, 102 Ohio St. 487, 133 N.E. 540 (1921). As you pointed out in your letter of request, the Non-Profit Corporation Act does not

---

[1]For brevity this Act shall be referred to in the balance of the opinion merely as the Act or as the Non-Profit Corporation Act.

expressly authorize the issuance of stock, but Article 2.08D does authorize the issuance of certificates or cards or other instruments evidencing, inter alia, ownership rights as authorized by articles of incorporation and the by-laws. In view of these authorities, we think that the authorization in the charter to issue stock is not in and of itself conclusive. Of course the authority to issue stock, the amount of stock issued, the distribution of the stock issued, and related factors are all material facts, which, when considered with all other material facts, may well justify the Secretary of State in determining that a particular applicant corporation is not in fact a non-profit corporation.

The purpose clause which is the subject matter of your first question reads as follows:

" 'The purpose for which it is formed is to "To establish and maintain fishing, hunting and boating clubs; to protect, preserve and propagate fish and game; to purchase and own such lands and bodies of water as may be desirable in connection therewith; to erect suitable improvements thereon, and to raise such livestock for profit only as the preserves of the club will maintain," as authorized by subdivision 10 of Article 1302 of the Texas Revised Civil Statutes of 1925.' "

Were it not for the phrase "to raise such livestock for profit only as the preserves of the club will maintain" it would be abundantly evident that such a corporation could be a non-profit corporation. Again this question, like all questions, is a matter of considering all relevant facts instead of merely the provisions of the purpose clause. The issue then evolves as to whether or not the addition of this phrase precludes an applicant corporation having such a purpose from being a non-profit corporation.

The purpose clause in question has its historical origin in Article 642 of the Revised Statutes of 1895, Section 42, which at th at time provided that corporations might be formed for the purpose of providing for "the protection, preservation and propagation of fish and game." Later the purpose was enlarged to include the propagation of oysters as well. Acts 1897, 25th Leg., Ch. 130, p. 188. In 1907 the statute was amended to enlarge the purpose to the present language. Acts 1907, 30th Leg., Ch. 150, p. 291. At that time, there was a provision in the corporate statutes providing for the formation of corporations which had as their general purpose the raising, buying, and selling of livestock. Thus the Legislature did not intend by its 1907 amendment to Article 642 R.S. 1895 to authorize corporations organized pursuant to Section 42 thereof (now subdivision 10, Article 1302, R.C.S., 1925) to engage in the general business of raising and selling livestock for profit.

As we construe subdivision 10, Article 1302, it authorizes such a cor-

Hon. Zollie Steakley, page 4 (WW-880)

poration to own land only insofar as it is incident to the main and principal purpose of establishing and maintaining fishing and hunting and boating clubs, protecting, preserving and propagating fish and game. This construction is in accordance with the general prohibition in the corporate laws prohibiting corporations from owning land except as an incident to the carrying out of their corporate purposes. See Articles 1359, et seq, Revised Civil Statutes of 1925, having their historical origin in Acts 1897, 25th Leg., Ch. 48, p. 48.

Subdivision 10 further limits the raising of livestock and acquiring such livestock as may be sustained wholly from the game and fish preserves which the corporation has acquired. This, of course, would naturally present a rather stringent limitation upon the number of livestock that could be raised by the corporation since the preserves must primarily be used as game and fish preserves. The language authorizing such corporations to raise live-stock for profit when limited by this context does not by any means authorize a corporation to engage in a business of raising livestock in such a way as would necessarily be calculated and intended that the profit or income thereby derived would be distributable to the members or stockholders in the club.

The provision allowing a subdivision 10 corporation to raise livestock for profit under these limited circumstances is not determinative of the non-profit status. The Act does not bar a corporation within its purview from engaging in an income producing enterprise but in fact contemplates such will be the case in some instances. Article 1.02A (3). The language of the Court in Southerland v. Decimo Club, Inc., 142 Atl. 786 (Del. Chan. 1928) is most appropriate in this regard:

"It is doubtless true that a social organization may be incorporated under the non-profit provision of our statute and within reasonable and proper limits engage in an activity to make profit. How far such an organization can go in that direction it is impossible to say in general terms. Each case as observed in Read v. Tide-water Coal Exchange, Inc., supra, must stand on its own facts."

The ultimate question again to be determined is whether the corporation is in fact a non-profit corporation as that term is defined by the Act. You are accordingly advised that a corporation desiring to adopt the provisions of the Texas Non-Profit Corporation Act and having a corporate purpose identical to that set out in subdivision 10 of Article 1302, Revised Civil Statutes of 1925, is not per se barred from adoption of the Act.

SUMMARY

The Secretary of State is authorized as a condition

precedent to the filing of application for the adoption of the Texas Non-Profit Corporation Act to require such germane and material information from the applicant as may be reasonably necessary for the Secretary of State to determine whether the applicant corporation is in fact a non-profit corporation.

Provisions in the corporate charter of a corporation applying to adopt the provisions of the Texas Non-Profit Corporation Act which authorize the corporation to issue shares of capital stock would not per se bar the corporation from the adoption of the provisions of the Act.

A corporation desiring to adopt the provisions of the Texas Non-Profit Corporation Act is not per se barred from doing so by virtue of provisions of its corporate charter setting out a purpose clause identical to that contained in Section 10 of Article 1302, Revised Civil Statutes of 1925.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _____
Wallace P. Finfrock
Assistant

WPF:pe

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Fred B. Werkenthin
C. K. Richards
J. C. Davis
Donald Bernard

REVIEWED FOR THE ATTORNEY GENERAL
BY:
         Leonard Passmore